FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Sep 04, 2025

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF WASHINGTON

|  |  |
|---|---|
| KRISTIE B. ON BEHALF OF SCOTTIE J. B. (DECEASED)[1], | NO. 1:25-CV-3022-TOR |
| Plaintiff, | ORDER OF REVERSAL AND REMAND |
| v. | |
| FRANK BISIGNANO[2], Commissioner of Social Security, | |
| Defendant. | |

---

[1] Using Plaintiff's and Decedent's initials to protect their privacy.

[2] Frank Bisignano was sworn in as the Commissioner of Social Security on May 7, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Frank Bisignano is substituted for Michelle King as the defendant in this suit. No further action need be taken to continue this under the Social Security Act, 42 U.S.C. § 405(g).

ORDER OF REVERSAL AND REMAND ~ 1

BEFORE THE COURT is Plaintiff's Motion for judicial review of Defendant's denial of his application for Title II and Title XVI under the Social Security Act (ECF No. 10). This matter was submitted for consideration without oral argument. The Court has reviewed the record and files herein and is fully informed. For the reasons discussed below, the Commissioner's denial of Plaintiff's application for benefits under Title II and Title XVI of the Social Security Act is REVERSED and REMANDED for further proceedings.

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited: the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158-59 (9th Cir. 2012) (citing 42 U.S.C. § 405(g)). "Substantial evidence" means relevant evidence that "a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id*. (quotation and citation omitted). In determining whether this

standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id*.

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id*. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE STEP SEQUENTIAL EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Second, the claimant's

impairment must be "of such severity that [he or she] is not only unable to do [his or her] previous work[,] but cannot, considering [his or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.152(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a0(4)(i), 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b). Substantial work activity is "activity that involves doing significant physical or mental activities," even if performed on a part-time basis. 20 C.F.R. § 404.1572(a). "Gainful work activity" is work performed "for pay or profit," or "the kind of work usually done for pay or profit, whether or not a profit is realized." 20 C.F.R. § 404.1572(b).

If the claimant is not engaged in substantial gainful activities, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. §§ 416.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work

activities," the analysis proceeds to step three.  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled.  *Id*.

At step three, the Commissioner compares the claimant's impairment to several impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. § 416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity" ("RFC") before awarding benefits.  RFC is generally defined as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations (20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1)), and is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the RFC, the claimant is capable of performing work that he or she has performed in the past. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not

disabled.  20 C.F.R. §§ 404.1520(f), 416.920(f).  If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the RFC, the claimant is capable of performing other work in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  Work in the national economy "means work which exists in significant numbers either in the region where [the] individual lives or in several regions of the country."  42 U.S.C § 423(d)(2)(A).  The Commissioner can meet this burden by soliciting the impartial testimony of a vocational expert ("VE").  *White v. Kijakazi*, 44 F.4th 828, 833-34 (9th Cir. 2022).  In making this determination, the Commissioner must also consider factors such as the claimant's age, education and work experience.  *Id*.  If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).  If the claimant is not capable of adjusting to other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits.  *Id*.

The claimant bears the burden of proof at steps one through four above, and a claimant who meets the first four steps has established a prima facie case of disability and entitlement to benefits.  *White*, 44 F.4th at 833 (citing *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)).  At step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other

work and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. §§ 404.1550(c)(2), 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ's FINDINGS

Decedent initially filed for Title II disability and disability benefits on September 7, 2021.  Administrative Transcript ("Tr.") ECF No. 7 at 32.  He also filed an application for Title XVI supplemental security income the same day.  *Id*. In both applications, Decedent alleged a disability onset date of August 28, 2021. *Id*.  He died on March 12, 2023.  Decedent generally alleged he was disabled due to his chronic heart failure, cirrhosis of the liver, obstructive sleep apnea with restless leg syndrome, and polysubstance abuse and dependence.  Tr. 34.  The ALJ dismissed Decedent's Title II application as he had no surviving substitution of party.  Tr. 32.  The ALJ denied Decedent's Title XVI application on September 30, 2023.  Tr. 44.  After the appearance of Decedent's sister as the legal representative of his estate, the Appeals Council issued a partially favorable decision, finding that Decedent was disabled due to his hepatocellular carcinoma beginning January 23, 2023.  Tr. 14.  However, because he died less than two months after the disability onset date, he was not entitled to Title II disability or disability insurance benefits. Tr. 15.  The Appeals Council upheld the remainder of the ALJ's decision.

The ALJ determined that Decedent met the insured status requirements of

the Social Security Act through December 31, 2025. Tr. 35. At step one, the ALJ determined that Decedent had not engaged in substantial gainful employment since April 28, 21. Tr. 35. At step two, the ALJ determined that Decedent's chronic heart failure, cirrhosis of the liver, and obstructive sleep apnea with restless leg syndrome were severe impairments. *Id*. The ALJ found Decedent's polysubstance abuse and dependence and related mental impairments as not severe.

At step three, the ALJ found that Decedent's cardiovascular condition did not meet any of the listing levels contained in Listing 4.00 of Appendix 1 impairments. Tr. 37. He was not disabled pursuant to Listing 5.02 or 5.05 surrounding liver disease because Decedent did not meet the specific requirements. *Id*. Finally, the ALJ determined that Decedent's sleep apnea did not reach a level of severity related to a listed impairment. *Id*.

In light of these findings, the ALJ determined that the Decedent had the Residual Functional Capacity ("RFC") to perform the following:

> [M]edium work as defined in 20 CFR 404.1567(c) and 416.967(c) except can frequently climb ramps and stairs, but never climb ladders, ropes, or scaffolds. The claimant can frequently balance, stoop, kneel, and crouch, but never crawl. The claimant can never work at unprotected heights, never around moving mechanical parts, and never operate a motor vehicle. The claimant can never work in concentrated exposure to dust, odors, fumes, and pulmonary irritants. The claimant can never work in concentrated exposure to extreme cold, extreme heat, or vibration.

Tr. 37. In making this determination, the ALJ found that Decedent's medically

ORDER OF REVERSAL AND REMAND ~ 8

determinable impairments could reasonably cause his alleged symptoms, but the intensity, persistence, and limiting effects of the symptoms are not entirely consistent with the medical evidence and additional evidence in the record.  Tr. 38.

Regarding his cardiovascular impairments, the ALJ determined that statements made about the intensity, persistence, and limiting effects of his symptoms were not supported by the medical evidence, which appeared to show mild objective findings and improvement with appropriate treatment.  *Id*. Specifically, the ALJ found that Decedent's congestive heart failure was diagnosed as New York Heart Association ("NYHA") class III due to his ejection fraction of 12-20% from an echocardiogram on April 28, 2021. *Id*.  In May 2021, Decedent was admitted for lower extremity edema, abdominal distention, and shortness of breath. In June 2021, Decedent again reported lower extremity edema, but an exam indicated only an irregular rhythm but normal heart sounds.  *Id*.  Also in June of 2021, Decedent was diagnosed with atrial fibrillation, but noted that it was appropriately controlled and anticoagulated.  *Id*.  On July 2, 2021, the Decedent underwent an ultrasound, revealing nonischemic dilated cardiomyopathy with an ejection fraction of 15% to 20%; normal coronary arteries; significant left ventricular diastolic dysfunction with left ventricular end-diastolic pressure of 20; chronic combined left ventricular systolic and diastolic congestive heart failure; and chronic atrial fibrillation with good heart rate control.  In August 2021,

Decedent was diagnosed with congestive heart failure, NYHA class II.  Tr. 38.  In November 2021, Decedent endorsed an ability to walk six blocks prior to experiencing dyspnea, and in December of 2021 an echocardiogram revealed an ejection fraction of 45-50%, Tr. 38.  The ALJ opined that the record demonstrated that this improvement from April was due to Decedent's abstention from methamphetamine and alcohol and control over his atrial fibrillation.

The ALJ also noted areas of noncompliance with Decedent's directive to check his blood pressure regularly and taking his medication.  Tr. 39.  He also endorsed following a poor diet and not exercising.  *Id*.  The ALJ also pointed to areas in the record where Decedent reported feeling well, denying exertional chest pain, dyspnea, and lightheadedness.  *Id*.  In April of 2022, an electrocardiogram showed normal sinus rhythm with borderline left axis deviation.  In sum, the ALJ noted that his improvement, coupled with his daily activities and symptom reporting, do not support the level of impairment related his cardiovascular limitations.  Tr. 40.

Decedent was diagnosed with restless leg syndrome in August 2021.  Tr. 38.  The ALJ noted that the record demonstrated Decedent was non-compliant with CPAP usage.  Tr. 39.

As to Plaintiff's liver related impairments, Decedent was assessed in February 2023 with jaundice due to his history of hepatitis C.  Tr. 39.  He endorsed

one month of nausea and vomiting and two weeks of pedal edema.  *Id*.  He was admitted for worsening abdominal pain and jaundice on March 7, 2023.  *Id*.  A series of images taken in the intervening days revealed hepatic cirrhosis with a large right hepatic mass, suggestive of malignancy such as hepatocellular carcinoma, a few pulmonary nodules evident, suspicious for metastatic disease, asymmetric borderline enlarged left base of the neck lymph nodes that may be metastatic, and mild ascites and significant abdominal wall edema.  Tr. 39.  He passed away on March 12, 2023, the cause of death noted as acute hepatorenal syndrome and hepatocellular carcinoma with mastitis to the lungs, lymph nodes, and thoracic spine all developing within five days of his passing.  *Id*.

In reaching this conclusion, the ALJ found the opinion of consultative examiner Marquetta Washington, ARNP, persuasive.  Tr. 41.  ARNP Washington found that Plaintiff could perform medium level work given his prognoses of nicotine abuse, marijuana abuse, congestive heart failure, restless leg syndrome, and sleep apnea were less than 12 months.  Tr. 41.  The ALJ found her opinion persuasive given that Decedent's diagnosis of chronic heart failure and sleep apnea presented postural and environmental limitations.  *Id*.

Additionally, the ALJ found the January 2022 opinion of state medical examiner Howard Platter, M.D. unpersuasive.  *Id*.  Dr. Platter found that Decedent was able to engage in light work, but only considered Decedent's ejection fraction

rate in April 2021.  *Id*.  Therefore, the ALJ found that given Decedent's improvements and ability to walk eight blocks without stopping and his capacity to climb a full flight of stairs, Dr. Platter's determination that Decedent was only capable of a light work limitation was unsupported.  *Id*.

At step four, the ALJ determined that Decedent was unable to perform any past relevant work.  Tr. 41.

At step five, the ALJ determined that Decedent was able to perform work in the national economy based on his age, work experience, and residual functional capacity.  Tr. 42.  At the hearing, the ALJ asked a Vocational Expert to assess opportunities for an unskilled medium occupational base with Decedent's specific RFC, and determined that jobs such as linen room attendant, coffee maker, and sandwich maker would be available nationally.  Tr. 43.

Based on the above findings, the ALJ determined that Decedent was not disabled.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying the Decedent's application for Title II disability and disability insurance and Title XVI supplemental security income.  Plaintiff raises the following issues on review:

I.    Whether the ALJ and the Appeals Council reversibly erred by not properly assessing the listings.

II.   Whether the ALJ reversibly erred by not properly assessing the

ORDER OF REVERSAL AND REMAND ~ 12

1    Decedent's allegations.

2    III.    Whether the ALJ reversibly erred by not properly assessing the medical
        opinions.

3

4    ECF No. 10 at 2.

5    **DISCUSSION**

6    **I.    The ALJ and the Appeals Council committed reversible err in**

7    **assessing Plaintiff's listings.**

8    Plaintiff first argues that the Decedent met or equaled Listing 4.02 for

9    congestive heart failure, and thus both the ALJ and the Appeals Council erred in

10   not finding him disabled at Step Three.  At step three, the ALJ must determine if a

11   claimant's impairments meet or equal a listed impairment.  20 C.F.R. §§

12   416.920(a)(4)(iii), 404.1520(a)(4)(iii).  The Listing of Impairments "describes each

13   of the major body systems impairments severe enough to prevent an individual

14   from doing any gainful activity, regardless of his or her age, education or work

15   experience."  20 C.F.R. §§ 416.925, 404.1525.  "Listed impairments are

16   purposefully set at a high level of severity because 'the listings were designed to

17   operate as a presumption of disability that makes further inquiry unnecessary.'"

18   *Kennedy v. Colvin*, 738 F.3d 1172, 1176 (9th Cir. 2013) (citing *Sullivan v. Zebley*,

19   493 U.S. 521, 532 (1990)).  "Listed impairments set such strict standards because

20   they automatically end the five-step inquiry, before residual functional capacity is

1  even considered." *Kennedy*, 738 F.3d at 1176.  If a claimant meets the listed

2  criteria for disability, he will be found to be disabled. 20 C.F.R. §§

3  416.920(a)(4)(iii), 404.1520(a)(4)(iii).

4      "To meet a listed impairment, a claimant must establish that he or she meets

5  each characteristic of a listed impairment relevant to his or her claim." *Tackett*,

6  180 F.3d at 1099; 20 C.F.R. §§ 416.925(d), 404.1525(d).  "To equal a listed

7  impairment, a claimant must establish symptoms, signs and laboratory findings 'at

8  least equal in severity and duration' to the characteristics of a relevant listed

9  impairment . . ." *Id.* (quoting 20 C.F.R. § 404.1526(a)).  "An adjudicator's

10  articulation of the reason(s) why the individual is or is not disabled at a later step in

11  the sequential evaluation process will provide rationale that is sufficient for a

12  subsequent reviewer or court to determine the basis for the finding about medical

13  equivalence at step 3."  Social Security Ruling (SSR) 17-2P, 2017 WL 3928306, at

14  *4 (effective March 27, 2017).

15      The Court agrees that the ALJ did not articulate fully within Step Three

16  portion of the decision regarding whether the Decedent met the listing under 4.02,

17  concluding simply that "the record fails to demonstrate evidence of listing level

18  chronic heart failure." Tr. 37.  This conclusive finding does not discuss the

19  requirements of the listing.  To satisfy Listing 4.02, the claimant must satisfy both

20  the Paragraph A and Paragraph B criteria, while on a regimen of prescribed

treatment, and with the symptoms and signs described in Listing 4.00(D)(2) including: cardiomegaly or ventricular dysfunction, demonstrated by medically acceptable imaging; symptoms and signs such as fatigue, weakness, dyspnea, cough, chest discomfort at rest or with activity, cardiac arrhythmias resulting in palpitations, lightheadedness or fainting, peripheral edema, rales, rapid weight gain, ascites, increased jugular venous distention or pressure, or hepatomegaly. 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 4.02. Paragraph A requires either 1) medically documented systolic failure with left ventricular end diastolic dimensions greater than 6.0 cm or ejection fraction of 30 percent or less during a period of stability (not during an episode of acute heart failure); or 2) diastolic failure, with left ventricular posterior wall plus septal thickness totaling 2.5 cm or greater on imaging, with an enlarged left atrium greater than or equal to 4.5 cm, with normal or elevated ejection fraction during a period of stability (not during an episode of acute heart failure). *Id.* Paragraph B requires one of the following: 1) persistent symptoms of heart failure which very seriously limit the ability to independently initiate, sustain, or complete activities of daily living in an individual for whom a medical consultant, preferably one experienced in the care of patients with cardiovascular disease, has concluded that the performance of an exercise test would present a significant risk to the individual; or 2) three or more separate episodes of acute congestive heart failure within a consecutive 12-month

period, with evidence of fluid retention from clinical and imaging assessments at the time of the episodes, requiring acute extended physician intervention such as hospitalization or emergency room treatment for 12 hours or more, separated by periods of stabilization; or 3) inability to perform an exercise tolerance test at a workload equivalent to 5 METs or less due to: a. dyspnea, fatigue, palpitations, or chest discomfort; or b. three or more consecutive premature ventricular contractions (ventricular tachycardia), or increasing frequency of ventricular ectopy with at least 6 premature ventricular contractions per minute; or c. decrease of 10 mm Hg or more in systolic pressure below the baseline systolic blood pressure or the preceding systolic pressure measured during exercise due to left ventricular dysfunction, despite an increase in workload; or d. signs attributable to inadequate cerebral perfusion, such as ataxic gait or mental confusion. *Id.*

However, factual finding outside of the listing evaluation section of the decision may offer reasoning supporting a listing evaluation. *Fulgencio S. v. Berryhill*, 8:18-CV-00318-MAA, 2018 WL 6248545, at *6 (C.D. Cal. Nov. 29, 2018) (citing *Browning v. Astrue*, No. CV-09-8094-PCT-GMS, 2010 U.S. Dist. LEXIS 43888, at *13, 2010 WL 1511667, at *5 (D. Ariz. Apr. 15, 2010)). Here, the ALJ failed to meaningfully deal with the evidence in the record in making a finding that Decedent did not meet Listing 4.02 at Step Three. However, in discussing Decedent's RFC, the ALJ noted that while Decedent had an ejection

fraction of 15-20% in both April and July of 2021, he ultimately had an ejection

fraction of 45-50% in December of 2021, placing him beyond the scope of

Paragraph A.  Tr. 38–39.  The ALJ did not address the other prong of Paragraph A,

whether Decedent was experiencing diastolic failure, and Plaintiff does not raise it

here.  Additionally, because the ALJ did not expand on her finding that the

Decedent did not meet Listing 4.02, there is very little discussion on whether he

satisfied Paragraph B.  For instance, the ALJ did not note that during a June 8,

2021 visit, the Decedent's cardiologist noted that "[g]iven his severe LV

dysfunction stress testing is not appropriate," thereby providing support for

Paragraph B.  Tr. 442.

A plaintiff bears the burden of establishing he meets a listing.  *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005).  Plaintiff argues that the Decedent

could have been found disabled based on his left ventricle ejection fraction

between April and June of 2021 meeting the requirements of Paragraph A.  ECF

No. 10 at 7.  Plaintiff also argues that even if the ALJ did not err in failing to find

him disabled pursuant to Paragraph A, she nevertheless failed to consider other

evidence of heart failure that may have contributed to a finding of disability.  For

example, Plaintiff proffers that in August 2021, Decedent had a high B-Type

Natriuretic Peptide (BNP) value of 197.9pg/mL which would indicate heart failure.

*Id*. at 7.  Also in August 2021, Decedent was hospitalized, and had a recorded

heartrate of 100 beats per minute. *Id*. Finally, even with the improvement of his left ventricle ejection fraction, Decedent was still assessed a New York Heart Association class II or III, which would indicate that he still would have been unable to complete an exercise test. *Id*. at 8.

Paragraph A does not set forth a fixed timeframe in which a plaintiff's ejection fraction must be below 30 percent, and "could presumably be met in less than twelve months." *Frank v. Colvin*, 6:14-CV-01434-AC, 2015 WL 6150852, at *3 (D. Or. Oct. 19, 2015). However, in documenting cardiovascular impairments, the statute states that a longitudinal record is critical in assessing the severity and expected duration of the asserted condition. 20 C.F.R. § Pt. 404, Subpt. P, App. 1. Here, the ALJ did not commit harmful error regarding Decedent's 4.02 Listing because contained within her decision was a discussion of an upward trend in Decedent's ejection fraction, combined with his ability to walk and complete daily activities, which longitudinally did not support a finding of disability. Tr. 40. While the ALJ did err in her Step Three analysis, the error is harmless because she functionally rejected the requirement of Paragraph A later in the decision. Because Listing 4.02 can only be met if a plaintiff establishes both Paragraph A and Paragraph B criteria, the ALJ did not harmfully error.

However, the ALJ did reversibly err in not addressing Listing 13.19, by not mentioning whether Decedent could have met or equaled the requirements. Listing

13.19 requires evidence of cancer of the liver, gallbladder, or bile ducts.  20 CFR Part 404, Subpart P, Appendix 1.  The Commissioner will consider the existence of a disabling impairment can be established prior to the date of the evidence that shows the cancer satisfies the criteria of a listing.  20 CFR Part 404, Subpart P, Appendix 1, 13.00(J).  In consideration of evidence of cancer before the onset date, the agency will examine: (1) the type of cancer and its location; (2) the extent of involvement when the cancer was first demonstrated; and (3) the claimant's symptoms.  20 C.F.R. § Pt. 404, Subpt. P, App. 1, 13.00(J).

The ALJ does not mention Listing 13.19 directly, and instead made a finding that Decedent died as a result in part due to hepatocellular carcinoma with metastasis to the lungs, lymph nodes, and thoracic spine, all which developed within five days according to his death certificate.  Tr. 40.  The Appeals Council reversed in part, finding that Decedent's hepatocellular carcinoma was not identified as a severe impairment which was in error.  Tr. 14.  However, the Appeals Council found that Decedent only met Listing 13.19 beginning January 23, 2023, a month before he presented for nausea and vomiting.  *Id*.  Because Decedent died in March of 2023, the Appeals Council determined he did not meet the five-month disability requirement in order to receive benefits under 20 CFR 404.315(a)(4)), and thus did not overturn the ALJ's denial.  Tr. 15.

Plaintiff argues and the Court agrees that evidence in the record could

suggest the onset of the disease before he developed the nausea and vomiting that led to his February 2023 visit.  Most notably, on March 7, 2023, Decedent endorsed jaundice "for several months" leading to his visiting and "worsening" abdominal pain.  Tr. 680.  The record should be examined longitudinally in discussing whether Decedent can demonstrate the requirements under 13.00(J).  In light of the lack of discussion of the contributing evidence to Listing 13.19 at either Step Three, or the impairments potentially associated in crafting Decedent's RFC, the Court finds remand necessary to more completely develop the record and make a finding.

Upon remand the ALJ shall assess Plaintiff's hepatocellular carcinoma under the Step Three listing requirements, hold another administrative hearing, and conduct the sequential evaluation to issue a new decision.

//

//

//

//

//

//

//

//

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Plaintiff's Opening Brief (ECF No. 10) is **GRANTED in part**.

2. Pursuant to sentence four of 42 U.S.C. § 405(g), this action is **REVERSED** and **REMANDED** to the Commissioner for further proceedings consistent with this Order.

3. Upon proper presentation, this Court will consider Plaintiff's application for costs, expenses, and reasonable attorney's fees under the Equal Access to Justice Act, 28 U.S.C. § 2412(a), (d).

The District Court Executive is hereby directed to file this Order, enter **JUDGMENT** for Plaintiff, provide copies to counsel, and **CLOSE** the file.

DATED September 4, 2025.



THOMAS O. RICE
United States District Judge

ORDER OF REVERSAL AND REMAND ~ 21